UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY W. ARGO,

                              Petitioner,

-vs-                                                        Case No.  8:05-cv-1964-T-33EAJ

SECRETARY, DEPT. OF CORRECTIONS,

                              Respondent.

_____/

## ORDER

    This cause is before the Court on Petitioner Larry W. Argo's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus. Argo is proceeding on his amended petition and supporting memorandum of law (hereinafter "Petition" or "petition").(Docs. 46, 47). Respondent filed a response to the petition (Doc. 61) and Argo filed a reply. (Doc. 68). Argo challenges his convictions and sentences entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.  A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## PROCEDURAL BACKGROUND

    On October 4, 2000, Argo was charged by Information with one count of Attempted Robbery With a Deadly Weapon (a knife), and one count of Driving While License

Suspended or Revoked. (Exh. 28: Vol 1: R 6-7).[1]  On March 28, 2001, Argo entered a plea of nolo contendere to the count of driving while license suspended or revoked (DWLSR). (Exh. 28: Vol. 1: R 6, 66). On the same date, the case proceeded to a jury trial on the attempted robbery count before the Honorable Nancy Moate Ley, Circuit Judge.  Argo was represented by Assistant Public Defender Bruce Johnson. The jury found Argo guilty of the lesser included offense of attempted robbery with a weapon. (Exh. 28: Vol. 1: R 35). On March 29, 2001, the court adjudicated Argo guilty and sentenced him to fifteen years incarceration as a prison releasee reoffender on the attempted robbery count, plus forty months incarceration on the DWLSR count, to be served concurrently. (Exh. 28: Vol 1: R 63-70).

Direct Appeal

Argo pursued a direct appeal. Richard P. Albertine, Jr., the Assistant Public Defender who represented Argo on appeal, filed an initial brief (Exhibit 1), raising three issues: 1) Did the court err by allowing the state to admit a small pocketknife into evidence for which no predicate had been laid to establish Its relevance?; 2) Did the court err by denying the defense motion(s) for judgment of acquittal?; 3) Did the court fundamentally err by allowing the state to make improper closing arguments so unfairly prejudicial that neither rebuke nor retraction would destroy their influence in attaining a fair trial?

The State filed its answer brief and Argo's attorney filed a reply brief. (Exhibits 2 and

---

[1] Respondent's Exhibits 1-28 were previously provided to this Court as an appendix to Respondent's response to the original § 2254 petition.  Exhibit 28, the record on direct appeal, consists of five volumes (one original, two supplemental, and two addendum volumes). The documents are contained in the first three volumes, which are referred to by volume number ("Vol. I"), followed by "R" and the appropriate page number supplied by the clerk in the bottom middle of the page. The trial transcript, which is contained in the two addendum volumes (designated volumes IV and V by Respondent), are referred to by volume number followed by "T" and the page number located in upper right hand corner of the page.

3). On November 8, 2002 in Case No. 2D01- 1798, the Second District Court of Appeal per curiam affirmed Argo's convictions and sentences. *Argo v. State*, 834 So. 2d 163 (Fla.. 2d DCA 2002) (Table) (Exhibit 4). The mandate issued December 9, 2002. (Exhibit 5).

### State Petition for Writ of Habeas Corpus

On July 11, 2003, Argo filed a petition for writ of habeas corpus in the district court of appeal, alleging ineffective assistance of appellate counsel. (Exhibit 6). Pursuant to the court's order to show cause, the State filed its response on or about September 10, 2003. (Exhibit 7). Argo filed a reply to the State's response. (Exhibit 8). On December 16, 2003, in Case No. 2D03-3181, the appellate court denied the claim of ineffective assistance of appellate counsel without discussion. (Exhibit 9).  Argo filed a motion for rehearing (Exhibit 10), which the appellate court denied on March 5, 2004. (Exhibit 11).

### Rule 3.850 Motion for Postconviction Relief
### and Rule 3.800(a) Motion to Correct Illegal Sentence

On May 17, 2004, Argo filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (Exhibit 12). On June 21, 2004, Argo filed a Rule 3.850 motion for postconviction relief and memorandum of law in the trial court. (Exhibit 13). Argo raised five allegations of ineffective assistance of trial counsel and a sixth claim that his due process rights were violated: 1) Trial counsel was ineffective for failing to advance, during the motion for judgment of acquittal, a valid argument that the pocketknife with the 2 to 3 inch blade did not meet the statutory definition of a weapon under § 790.001(13), Fla. Stat.; 2) Trial counsel was ineffective for failing to request that the trial court take judicial notice of the *L.B.* case[2] and failed to argue during opening statement that the State had to prove that

---

[2] *L.B. v. State*, 700 So. 2d 370 (Fla. 1997).

3

the knife was used in a manner likely to cause death or great bodily harm; 3) Trial counsel was ineffective for failing to object to the State's characterization as the knife being a per se deadly weapon; 4) Trial counsel was ineffective for failing to request a jury instruction based on § 790.001(13), Fla. Stat.'s definition for "weapon" and *L.B.*'s clarification of what constitutes a "common pocket knife"; 5) Based cumulatively on grounds one through four, Argo received ineffective assistance of counsel; 6)  Argo's due process rights were violated by the State's failure to prove all the elements of the offense of robbery with a weapon because his pocketknife did not satisfy the definition of "weapon" under § 790.001(13), Fla. Stat.

On September 2, 2004, the state postconviction court summarily denied the Rule 3.800(a) motion to correct illegal sentence, and summarily denied grounds one, two, three, and six of the Rule 3.850 motion.  The court reserved ruling on ground five, and directed the state to respond to ground four. (Exhibit 14). Argo filed a motion for rehearing as to the four claims summarily denied. (Exhibit 15). The State filed its response to the order to show cause on September 23, 2004. (Exhibit 16). Argo filed a reply to the State's response. (Exhibit 17).

On September 26, 2004, the state postconviction court denied the motion for postconviction relief on grounds four and five, and denied Argo's motion for rehearing as to grounds two, three, and six. (Exhibit 18). Argo filed a motion for rehearing of the final order (Exhibit 19), which was denied on November 23, 2004. (Exhibit 20). Argo appealed the adverse rulings. He filed an initial pro se brief raising six issues. (Exhibit 21). Because of the summary nature of the case, the State did not file an answer brief. On May 6, 2005, in Case No. 2D04-5745, the appellate court per curiam affirmed the denial of postconviction

4

relief. (Exhibit 22). *Argo v. State*, 906 So. 2d 1066 (Fla. 2d DCA 2005)[table]. Argo filed a

motion for rehearing (Exhibit 23), which the appellate court denied on July 5, 2005. (Exhibit

24). The mandate issued July 7, 2005. (Exhibit 25).

All Writs Petition

On July 26, 2005, Argo filed an all writs petition for extraordinary relief in the Second

District Court of Appeal. (Exhibit 26). On October 20, 2005, in Case No. 2D05-3671, the

appellate court filed an order dismissing the petition because there was no basis for

invoking the court's all writs jurisdiction. (Exhibit 27). Argo v. State, 2005 Fla. App. LEXIS

20685 (Fla. 2d DCA 2005)[table].

Second Rule 3.850 Motion for Postconviction Relief

On August 8, 2006, Argo filed a second Rule 3.850 motion for postconviction relief.

(Exhibit 29). In that motion, Argo claimed he first obtained a fully accurate copy of the

Information in his case on September 7, 2004, in the form of an exhibit attached to the trial

court's order denying Argo relief on a claim of illegal sentence. Through this copy of the

Information, Argo claimed he first became aware of the fact the original charged offense

in Count One, attempted robbery with a deadly weapon, was in fact a second degree felony

and not a first degree felony, as his counsel advised him before trial. Prior to September

7, 2004, Argo possessed a copy of the Information provided through discovery which

incorrectly listed attempted robbery with a deadly weapon as a first degree felony. Based

on this newly obtained copy of the Information, Argo asserted three claims of ineffective

assistance of counsel and one claim of trial court error. Specifically, he alleged:

> 1. The trial court erred by allowing the jury to consider an impermissible
> lesser-included offense which carried the same penalty and punishment as
> the charge under consideration.

5

2. Ineffective assistance of counsel for failing to investigate and determine the offense level of the charged offense.

3. Ineffective assistance of counsel for failing to object to the erroneous proposal of an impermissible lesser-included offense.

4. Ineffective assistance of counsel for misadvising Argo he faced a first-degree charge of attempted robbery with a deadly weapon.

On October 23, 2006, the postconviction court filed its Order to Show Cause. (Exhibit 30). The court ruled that Argo was not time-barred from filing the motion for postconviction relief where Argo failed to discover he was incorrectly informed that attempted robbery with a deadly weapon was a second degree felony. The postconviction court summarily denied ground one of Argo's motion for postconviction relief as procedurally barred, ruling the claim was not cognizable under a Rule 3.850 motion when it could have been raised on direct appeal. The court further ruled the record did not conclusively refute grounds two, three, and four of Argo's motion, and instructed the State to respond. On February 28, 2007, the State filed its Response to Order to Show Cause. (Exhibit 31).

On June 29, 2007, the postconviction court filed an "Order Denying In Part and Denying Without Prejudice in Part Defendant's Motion for Postconviction Relief." (Exhibit 32). In its order, the court noted case law suggested a necessary lesser-included offense may be properly listed on a verdict form although it is the same in degree and penalty, because the elements of the lesser offense are necessarily encompassed within the charging document. Thus, trial counsel could not be deemed ineffective for failing to object to this issue, where attempted robbery with a weapon was an appropriate, necessarily lesser-included offense of attempted robbery with a deadly weapon. For this reason, the

state court denied ground three of the motion for postconviction relief. The postconviction court also denied grounds two and four, without prejudice, to allow Argo to allege he would not have proceeded to trial but instead would have pleaded guilty, but for counsel's alleged ineffectiveness.

On July 11, 2007, Argo filed a "Motion For Rehearing/Clarification." (Exhibit 33). On August 21, 2007, the postconviction court granted the motion for rehearing, with directions to the State. (Exhibit 34). In the order, the court found Argo stated facially sufficient claims of ineffective assistance of counsel in grounds two, three, and four of the Rule 3.850 motion, and ordered an evidentiary hearing on those grounds.

At a pre-evidentiary hearing status held on September 19, 2007, to determine whether Argo should be appointed counsel to represent him at the evidentiary hearing, Argo attempted to argue the merits of a pro se motion for arrest of judgment which he hand delivered to the court at the hearing. (Exhibit 36 at p.5). In that motion, he claimed he was entitled to have his judgment vacated because the Information, which was apparently amended after trial, was defective. Argo conceded the motion was untimely, but sought a nunc pro tunc ruling. The court ordered that Argo had to provide notice to the State and schedule a hearing on that issue. The court gave Argo a week to comply. (Exhibit 36 at pp. 6, 13-15).  On September 25, 2007, Argo *filed* his pro se motion for arrest of judgment. (Exhibit 35). No further information regarding the disposition of the motion for arrest of judgment appears in the record in the postconviction *appeal*. On or about October 17, 2007, Argo retained counsel to represent him at the Rule 3.850 evidentiary hearing.

On February 8, 2008, the Honorable R. Timothy Peters, Circuit Judge, conducted an evidentiary hearing on claims two, three, and four of Argo's postconviction motion.

(Exhibit 37). At the hearing, Argo was represented by Mark Randall Teale, Esquire. Argo testified along with his trial counsel, Bruce Johnson. The "defective Information" issue was neither raised by Argo's postconviction counsel nor addressed at that hearing. Argo's counsel specifically addressed only two claims: 1) the court, the prosecutor, and the defense were under the mistaken belief that the charged crime of attempted robbery with a deadly weapon was a first degree felony rather than a second degree felony;  and, 2)  the jury was improperly instructed on the lesser included offense of attempted robbery with a weapon because the charged and lesser included offenses were both of the same degree and carried the same penalty.

On February 26, 2008, the postconviction court filed its "Final Order Denying Defendant's Motion for Post-conviction Relief." (Exhibit 38). In short, the court determined Argo failed to establish a reasonable probability the outcome of the proceeding would have been different had counsel investigated and provided advice as to the degree of the charged offense. Based upon the testimony presented at the February 8, 2008, evidentiary hearing, the court noted Argo rejected the State's plea offer of fifteen years incarceration because the offer was too severe given the circumstances of the offense. Argo instead chose to proceed to trial believing the State could not prove Argo used a weapon during the course of the robbery. Additionally, Attorney Johnson testified that his trial preparation and strategy would have been the same had he known the charged offense was a second-degree felony. Finally, nothing within the record establishes the State would have offered less than fifteen years had it recognized that the charged offense was a second-degree felony. While Argo testified he would have accepted a guidelines sentence of less than fifteen years, the record shows the State filed a notice of intent to seek an

8

enhanced penalty. Accordingly, the postconviction court denied relief as to grounds two and four of the motion for post-conviction relief.

The postconviction court likewise denied relief as to ground three of Argo's motion. The court found trial counsel's performance was not deficient in failing to raise an objection to the inclusion of the lesser-included offense of attempted robbery with a weapon in the jury instructions. In so ruling, the court did not conclude, as a matter of law, that an objection to the jury instructions in this case would have been without merit. According to the court, the jury instructions at issue in this case presented a concern that has yet to be conclusively resolved by Florida's appellate courts. Specifically, the issue was whether an offense listed on a verdict form may be the same in degree and penalty as the charged offense where the court has no discretion to impose a lesser sentence. However, the court noted counsel should not be expected to anticipate developments in the law that make possible the raising of a novel issue.

Even assuming the case law did establish the jury instructions in the instant case were erroneous, the postconviction court found the absence of such an objection did not prejudice the outcome of the proceedings. The court noted Argo was acquitted of the charged offense of attempted robbery with a deadly weapon. Thus, Argo's claim of relief in ground three did not depend on speculation the jury would have exercised its pardon power to acquit Argo of the charged offense.

Argo appealed the adverse ruling. He filed an amended initial pro se brief (Exhibit 39) raising three issues: 1) The post-conviction court erred by summarily denying appellant's claim the trial court committed fundamental error by allowing the jury to consider an impermissible lesser included offense which carried the same penalty and punishment

9

as the charge under consideration; 2) Whether the postconviction court erred by failing to address the merits of appellant's claim that the information in this case was fundamentally defective; and,  3) Whether the postonviction court erred when denying appellant's claim that trial counsel was ineffective for failing to investigate and determine the proper offense level of the charged offense; object to the erroneous proposal of an impermissible lesser-included offense; and misadvising Argo he faced a first-degree charge of attempted robbery with a deadly weapon.

The State filed its answer brief (Exhibit 40), and Argo filed a reply brief. (Exhibit 41). On June 26, 2009, in Case No. 2D08- 2131, the Second District Court of Appeal per curiam affirmed the denial of postconviction relief. (Exhibit 42). *Argo v. State*, 14 So. 3d 1010 (Fla. 2d DCA 2009)[table]. Argo filed a motion for rehearing and motion for rehearing en banc. (Exhibit 43). The appellate court denied both motions on August 5, 2009. (Exhibit 44). The court's mandate issued August 21, 2009. (Exhibit 45).  Argo is proceeding on his 28 U.S.C. § 2254 petition for writ of habeas corpus in which he raises three grounds for relief.

## STANDARDS OF REVIEW

## AEDPA STANDARD OF REVIEW

Argo's federal petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an

10

"unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).

Indeed, it is not enough that the federal courts believe that the state court was wrong; it

must be demonstrated that the state court decision was "objectively unreasonable." Id.

*Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To prevail on a claim of ineffective assistance of trial or appellate counsel, a

Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668

(1984).   *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's

performance was deficient and "there was a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.*

However, if a claim fails to satisfy the prejudice component, the court need not make a

ruling on the performance component.

**DISCUSSION**

GROUND ONE

Argo contends his constitutional rights to due process and to be informed as to the

nature of the accusation were violated when the charging document was substantially

amended after the trial, without having ever informed the defense of said amendment. As

sub-issues, Argo alleges that (a) a fundamentally defective Information renders judgment

of conviction invalid; (b) the unauthorized amendment renders the Information void; and (c)

the misleading nature of the substantial defect.

Ground One is procedurally barred because Argo failed to exhaust the federal

constitutional dimension of the claim. In his motion for arrest of judgment, filed by Argo

during the second Rule 3.850 postconviction proceeding, Argo argued only state law as a

11

basis for finding the Information defective. He did not refer to due process or cite federal constitutional law. It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S.764, 780 (1990)). The legal sufficiency of the Information is a matter of state law. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

In addition, Ground One is procedurally barred by Argo's failure to pursue this claim in the state court. The allegations were not specifically addressed by the postconviction court because it appears Argo abandoned this claim by not proceeding with his motion for arrest of judgment after he was given an opportunity to do so. Moreover, Argo's claim was both untimely and without merit. Pursuant to Florida law, as a general rule, a defect in the information is waived if no objection is timely made so long as the information does not wholly fail to state a crime. *State v. Burnette*, 881 So. 2d 693, 694-695 (Fla. 1st DCA 2004). "An information is fundamentally defective only where it totally omits an essential element

12

of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy." *Id.* Further, even a failure to include an essential element in an indictment does not necessarily render the indictment fundamentally defective when the indictment references a specific section of the criminal code, which details the elements of the offense. *Id.* at 695. The change in the Information in Argo's case was merely to the degree of the offense charged. This alteration in no way rendered the Information fundamentally defective.

Alternatively, to the extent the postconviction court may have arguably addressed the alleged "defects" in the amended Information, the court properly rejected Argo's claim. In the appeal from the order denying the Rule 3.850 motion, Argo argued the postconviction court erred by failing to consider the merits of Argo's claim that the Information in this case was fundamentally flawed because the defense was never informed of any amendments to Count one, and because of its misleading nature. (Exh. 39 at pp. 29-35). The State correctly replied in its answer brief that contrary to Argo's assertions, the record shows the trial court did in fact examine alleged prejudice surrounding the circumstances of the "amended" Information. In its February 26, 2008, Final Order Denying Defendant's Motion for Postconviction Relief, the court determined Argo failed to establish a reasonable probability the outcome of the proceeding would have been different had counsel investigated and provided proper advice as to the correct degree of the charged offense in the Information.

To this end, the postconviction court noted, at the February 8, 2008, evidentiary hearing, Mr. Johnson, appellant's trial counsel, testified his trial preparation and strategy would have been the same had he known the charged offense was a second-degree

13

felony. The court also noted Argo rejected the State's plea offer of 15 years, not because Argo was misled by the degree charged in Count One of the Information, but because the State's plea offer was too severe given the circumstances of the offense. According to Argo, he chose to proceed to trial believing the State could not prove he used a weapon during the course of the robbery. Finally, the postconviction court noted that nothing within the record established the State would have offered less than 15 years had it recognized Count One of the Information was a second-degree felony. To the extent Argo's claim is not procedurally barred, it is without merit for the reasons stated by the postconviction court in its final order denying relief. The state court's decision is objectively reasonable and entitled to deference under the AEDPA.

Ground One does not warrant habeas corpus relief.

**GROUND TWO**

Argo asserts his constitutional right to due process was violated due to (a) the failure to prove an essential element of the offense for conviction; (b) improper conviction by general verdict based on dual theories, one of which was legally inadequate; (c) prosecutorial misconduct; and, (d) conviction of an improper and impermissible lesser offense.

Sub-claim (a)

Argo asserts his due process rights were violated by the State's failure to prove all the elements of the offense of robbery with a weapon because his pocketknife did not satisfy the definition of "weapon" under § 790.001(13), Florida Statutes. Argo raised this claim, in constitutional terms, in Ground Six of his first Rule 3.850 motion. The state postconviction court rejected this claim because Argo did not show how his due process

14

rights were implicated and the issue was procedurally barred because it should have been preserved at trial and raised on direct appeal. (See Respondent's Exh. 14 at p. 4).

The issue that lies at the core of many of Argo's claims is whether Argo's conviction for robbery with a weapon, under the facts of this case, is "sound and proper" under state law. A finding that Argo's conviction is proper would vitiate many of Argo's arguments. Because the underlying substantive claims concern a matter of state law, a review of the evidence adduced at trial and the state court's treatment of this issue is essential. Argo's first claim in Ground One of the federal petition is similar to his claim in his motion to correct sentence filed in the state trial court on May 17, 2004. (Exhibit 12). The postconviction court addressed the issue as follows:

<u>Motion to Correct Sentence, filed on May 17, 2004</u>

In this motion, Defendant states that he could not be sentenced for robbery with a weapon because the record indicates that he carried a common pocketknife, which was specifically excluded as a "weapon" pursuant to §790.001(13) and its attendant case law. Defendant states that the record shows that he carried a common pocketknife, or folding-type knife with a blade measuring less than four inches, as described in *L.B. v. State*, 700 So. 2d 370 (Fla. 1997).

As Defendant is actually contesting his conviction for robbery with a weapon, this claim is not cognizable under Rule 3.800(a), but more appropriately considered pursuant to Rule 3.850. This claim cannot be considered under this Rule because it does not contain an oath.

Nevertheless, even considered under Rule 3.850, this claim would fail. Contrary to Defendant's contention, the record is not clear that the weapon Defendant displayed in the robbery was a common pocketknife as defined in *L.B.* The victim described the knife as a shiny switchblade type knife with a six to eight-inch blade. See Exhibit C: Excerpt of Trial Transcript, pp. 19-20; 32-34. Det. McKay testified to stopping Defendant's truck shortly after receiving the BOLO and retrieving a four-inch folding pocketknife with a two or three-inch blade from Defendant's backpack. See Exhibit C at pp. 51-52; 56-59; 67. Defendant himself denied carrying a knife at all and testified that the victims mistook his nail clipper as a knife. See Exhibit C at pp. 138-139.

> Moreover, the jury verdict did not specifically indicate which description of the knife they found he carried during the commission of the robbery; the jury concluded only that Defendant threatened to use a weapon defined as an "object that could be used to cause death or serious bodily harm." See Exhibit D: Excerpt of Jury Instruction; See Exhibit E: Jury Verdict Form. Therefore, this claim is denied.

(Exh. 14: 9/2/04 order at p. 2).

Argo's conviction for attempted robbery with a weapon was valid because of the manner in which the pocketknife was used in this case. Citing numerous state decisions, the postconviction court, in denying Argo's allegation of ineffective assistance of counsel for failing to request a special jury instruction that the common pocketknife is excluded from the definition of weapon, stated, "A common pocketknife is transformed into a deadly weapon or weapon when a defendant uses or threatens to use it during a crime in such a way that it would be likely to cause death or serious bodily injury or could be used to cause death or inflict serious bodily injury." (10/21/04 Order denying relief at p. 2). *See, e.g., Cassidy v. State*, 853 So. 2d 594 (Fla. 5th DCA 2003)(finding sufficient evidence to make it a jury question whether pocketknife used in robbery was a deadly weapon where defendant displayed an open pocketknife to the store clerk and threatened to cut her throat); *Durden v. State*, 743 So. 2d 77 (Fla. 1st DCA 1999) (affirming conviction for robbery with a deadly weapon where the defendant held the open blade of a pocketknife to the victim's throat).

The victim in this case testified that Argo threatened him with the protracted six to eight inch blade, moving the knife back and forth from hand to hand, while demanding the victim's wallet. The victim said Argo was trying to show the victim that he had a knife. The victim testified that he was in fear because he did not know whether Argo was going to

16

come at him with the knife. The victim also said Argo had a cloth that he held in front of face and moved around to hide his face. (Exh. 28: Vol. IV: T 19-20, 32, 34). The issue of whether there was sufficient evidence to support a conviction of attempted robbery with a weapon under Florida law, given the particular facts of Argo's case, was presented to the state courts in the direct appeal and in the first motion for postconviction relief. Argo's challenges to the conviction on this basis were rejected by the state courts in both proceedings.

Furthermore, Sub-claim (a) of Ground Two is procedurally barred because Argo failed to preserve the issue at trial and to raise it on direct appeal. As the state postconviction court correctly determined in rejecting this argument in the first Rule 3.850 motion, this claim could have been and should have been raised on direct appeal and was therefore not cognizable in a motion for postconviction relief. "Issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack." *Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla. 1995). Postconviction proceedings under Rule 3.850 are not be used as a second appeal, nor is it appropriate to use a different argument to relitigate the same issue(s). *See also, Green v. State*, 975 So. 2d 1090 (Fla. 2008)(A claim that could and should have been raised on direct appeal is procedurally barred; Proceedings under Fla. R. Crim. P. 3.850 are not to be used as a second appeal); *Torres-Arboleda v. Dugger*, 636 So.2d 1321, 1323 (Fla. 1994) (same).

### Sub-claim (b)

Argo complains he was convicted by general verdict based on dual theories, one of which was legally inadequate. Specifically, Argo takes issue with the State's position, as first argued in its response to Argo's initial motion for postconviction relief, that the verdict

17

could have been based on the use of a knife described by the victim, rather than the pocketknife that was discovered in Argo's backpack and later entered into evidence. Argo did not assert this allegation until he filed a motion for rehearing after the court's denial of his original Rule 3.850 motion. (See Respondent's Exhibit 15). This "dual theories" claim must be dismissed. Argo fails to state a cognizable federal constitutional issue and, moreover, the claim is unexhausted and procedurally barred. Clearly, this is the type of issue which must be preserved at trial and raised on direct appeal. Therefore, even if Argo had presented this issue in his motion for postconviction relief, it would have been dismissed by the trial court on procedural grounds. To avoid a procedural default, a petitioner must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

The procedurally correct manner for preserving claims of error that occurred during trial is to assert the error initially at the trial level and then raise the alleged error on direct appeal. "In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court." *Bertolotti v. Dugger,* 514 So. 2d 1095, 1096 (Fla. 1987). *See Occhicone v. State*, 570 So. 2d 902, 906 (Fla. 1990).

The federal court must dismiss those claims or portions of claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, or are not exhausted but would clearly be barred if the petitioner returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). *See also, Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993)(Federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally

defaulted).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or can establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense, *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted). In addition, Argo does not meet the prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. He does not suggest the existence of new and reliable evidence of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Argo failed to present his claim to the state courts in a procedurally correct manner so as to necessitate review on the merits, and it is too late for him to obtain such review. Therefore, sub-claim (b) of Ground Two is procedurally defaulted.

Sub-claim (c)

Argo alleges prosecutorial misconduct due to (1) the prosecutor's subterfuge in amending Count One of the Information under the guise that an amendment to Count Two was necessary; (2) the prosecutor's comments made during closing arguments were unfairly prejudicial; (3) the prosecutor argued facts not in evidence; and (4) the prosecutor misstated the law as to required proof of guilt.

19

### Sub-claim (c)(1):

As his first allegation of prosecutorial misconduct, Argo contends the prosecutor used subterfuge in amending Count One of the Information under the guise that an amendment to Count Two was necessary. Specifically, Argo contends that on April 3, 2001, days after trial, the State moved to amend Count Two of the Information. He adds, "Apparently, having realized a substantial defect in count 1, a correction was made to same" and the defense was never informed of the amendment. This claim must be dismissed for failure to present a federal constitutional issue.

### Sub-claims (c)(2), (c)(3), and (c)(4):

Argo next claims the trial court fundamentally erred by allowing improper prosecutorial comments during closing argument. Specifically, Argo refers to the prosecutor's description of him as a "predator," and a liar, arguing facts not in evidence, and misstating the law as to the required proof of guilt.[3] These allegations are procedurally barred because Argo did not object at trial and preserve the issues for direct appeal. As the State correctly stated in the answer brief on direct appeal, in Florida, in order to preserve a claim of prosecutorial misconduct for appellate review, a contemporaneous objection must be made at trial. *Chandler v. State*, 702 So.2d 186 (Fla. 1997), *cert. denied*, 523 U.S. 1083 (1998); *Parker v. State*, 705 So.2d 959 (Fla. 2d DCA 1998); and *Henderson v. State*,

---

[3] In Argo's direct appeal, he argued the prosecution misstated the law as to the required proof so as to aggravate the attempted robbery by being committed with a weapon. (Exh. 1 at p. 43). The State properly contended this argument was meritless because the knife used in the course of the offense could legally be considered by the jury as a weapon where the facts show Argo handled the knife in the open position during the attempted robbery. *See e.g. Wells v. State*, 730 So. 2d 294 (Fla. 1st DCA 1999); and *Porter v. State,* 798 So. 2d 855 (Fla. 5th DCA 2001). Consequently, even if the matter had been preserved, the prosecution did not misstate the law during closing argument.

727 So.2d 284 (Fla. 2d DCA 1999)(error regarding prosecutor's alleged improper remarks not preserved by contemporaneous objection and thus waived)." (See Respondent's Exhibit 2 at p. 12).

Even if the issue had been preserved, however, the remarks were fair comments on the evidence and, in any event, not one of them was sufficiently egregious or prejudicial so as to deny Argo a fair trial. In *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), the United States Supreme Court noted that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned . . . The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." The *Darden* case, which contained remarks by the prosecutors that were far more inflammatory than the comments at issue in the instant case, was affirmed by every state and federal court that reviewed it. As in Argo's case, Darden was not deprived of a fair trial because the "prosecutor's argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden*, 477 U.S. at 181-182.

Sub-claim (d):

In his fourth sub-claim alleging due process violations, Argo contends he was convicted of an improper and impermissible lesser offense where (1) the lesser offense was equal in both degree and in penalty to the charged offense; and (2) the verdict form effectively misled the jury.

This claim must be rejected for at least two reasons. First, Argo has presented a state law claim for which no federal habeas corpus relief may be granted. Second, the claim is procedurally barred, because it was raised for the first time in Argo's initial motion

for postconviction relief. The state postconviction court denied the claim as procedurally barred, ruling the claim was not cognizable under a Rule 3.850 motion when it could have been raised on direct appeal. *See Green v. State*, 975 So. 2d 1090 (Fla. 2008)(A claim that could and should have been raised on direct appeal is procedurally barred; Proceedings under Fla. R. Crim. P. 3.850 are not to be used as a second appeal.). The denial of this claim was affirmed on appeal.

Finally, the conviction was proper under state law. The State argued in its answer brief in the postconviction appeal that Argo's

> argument has already been addressed and rejected by the Florida Supreme Court. In *Sanders v. State*, 944 So. 2d 203 (Fla. 2006), the Florida Supreme Court clarified *Ray v. State*, 403 So.2d 956 (Fla. 1981), and held that, in order for an offense to be a lesser included offense, it is not necessary that it result in a lesser penalty than either the penalty for the main offense or that for the next greater offense on the verdict form. The Court noted there is no requirement the lesser-included offense "be lesser both in degree and in penalty." *Sanders*, 944 So. 2d at 207. Thus, it is clear the trial court in the present case did not commit reversible error by giving the instruction on the necessary lesser-included offense of attempted robbery with a weapon. The fact appellant received the same sentence for a lesser-included offense with the applied enhancements as he would have for the charged offense subject to the same enhancements was not fundamental error.

(Exh. 40 at pp. 13-14).

Ground Two does not warrant habeas corpus relief.

**GROUND THREE**

Argo raises five allegations of ineffective assistance of trial counsel, with numerous sub-claims: (1) counsel failed to conduct an adequate pretrial investigation; (2) counsel misadvised Argo as to his maximum exposure upon conviction; (3) counsel failed to request a jury instruction based on the pocketknife's exclusion from the definition of a weapon; (4) counsel failed to object to prosecutorial misconduct and the verdict form and jury

instructions; and (5) cumulative effect of counsel's errors.

Sub-claim (a): Adequacy of Counsel's Pretrial Investigation

Argo asserts trial counsel failed to familiarize himself with the facts of the case and the statutory law applied to those facts, citing the following factual bases:

**Sub-claims (a)(1) and (a)(2)**

In sub-claims (a)(1) and (a)(2), Argo faults counsel for failing to determine the correct level of the degree of the charged offense, and for failing to alert the trial court to certain case law. Argo raised the first allegation in grounds two and four of his second Rule 3.850 motion, and the matter was addressed at a full and fair evidentiary hearing. The state postconviction court's final order denying relief states in pertinent part:

> In claims two and four, as numbered in the Defendant's original motion, Mr. Argo maintains that his trial counsel was ineffective in failing to investigate and provide advice that the charged offense of attempted robbery with a deadly weapon was a second-degree felony rather than a first-degree felony. The Defendant further contends that he would have accepted a plea offer to a guideline sentence had he been aware that the charge was a second-degree felony punishable by a maximum of 15 years in prison.

> Attempted robbery with a deadly weapon is a second-degree felony punishable by a maximum of 15 years in prison. See § 812.13(2)(a), Fla. Stat. (1999) (classifying deadly weapon as a first degree felony punishable by a maximum sentence of life and § 777.04(4)(c), Fla. Stat. (1999) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony). The charging document, as originally prepared, listed attempted robbery as a first-degree felony. Exhibit A: Felony Information. The court must therefore evaluate whether counsel's lack of knowledge and advice as to the offense level undermines confidence in the outcome of the proceeding.

> During the evidentiary hearing, the court received testimony from Mr. Argo and his trial counsel Bruce Johnson, Esq. The testimony established that at the time of the trial, Mr. Johnson understood the charged offense of attempted robbery with a deadly weapon to be a first-degree felony with a maximum prison releasee reoffender sentence of 30 years. Mr. Johnson recalled that this was also the State's understanding of the charge. The State

23

had filed a notice of intention to seek a prison releasee reoffender sentence. The State conveyed a plea offer of a 15-year prison releasee offender sentence. Mr. Argo did not accept this 15-year plea offer. Mr. Johnson did not know whether the State would have proposed a lesser offer had the State been aware that the charged offense was a second-degree felony.

Mr. Argo testified that his understanding prior to trial was that he faced a 30-year minimum mandatory sentence if he were convicted of the charged crime. Mr. Argo noted that the transcript of a pretrial hearing indicated that this was the understanding of the court and the State. Exhibit B: Transcript of Pretrial Hearing at 3-5. Mr. Argo recalled asking Mr. Johnson whether the attempt statute made the charged offense a second-degree felony. Mr. Argo further recalled that Mr. Johnson responded that because robbery with a deadly weapon was punishable by life imprisonment, that an attempt of the offense was punishable by only 30 years. Based on this information, as well as the charging document, Mr. Argo assumed counsel's interpretation of the attempt statute to be correct. Mr. Argo went on to explain that based on the testimony of the victim, as well as the fact that the pocketknife was in Mr. Argo's backpack at the time of the offense, he did not believe the State could prove one of the elements of attempted robbery with a deadly weapon. Mr. Argo further testified that he would have accepted a plea to a guidelines sentence.

Mr. Johnson recalled that the trial took place with all parties understanding that the charged offense was a first-degree felony punishable by 30 years' imprisonment. Mr. Johnson explained that he assumed the State believed the charged offense to be a first-degree felony because the parties agreed that the jury instructions were proper, and because the State at no time had informed him that the charged offense was a second-degree felony, contrary to what was listed on the information. Mr. Johnson testified that the labeling of the charged offense as a first-degree felony did not affect his preparation for the trial or strategy during the trial. Mr. Argo was acquitted of the charged offense and convicted of attempted robbery with a weapon.

Mr. Johnson did not recall the date of any change or amendment to the information. Mr. Johnson did not recall becoming aware that the information was changed to reflect a second-degree felony until he was advised of this fact by the State during the course of these postconviction proceedings.

Based on the testimony presented, Mr. Argo has not established a reasonable probability that the outcome of the proceeding would have been different had counsel identified the offense level of the charged offense. Mr. Argo rejected a plea offer of 15 years in prison, reasoning that the offer was too severe given the circumstances of the offense. Mr. Argo chose to

proceed to trial believing in part that the State could not prove that he had used a weapon during the course of the robbery. Mr. Johnson testified that his preparation and trial strategy were the same as if he had known that the charged offense was a second-degree felony. The jury, based upon the evidence presented at trial, acquitted Mr. Argo of the charged offense and convicted him of the lesser-included offense of attempted robbery with a weapon. The record reflects that Mr. Argo received a fair trial and that the jury's verdict was supported by the evidence.

Nothing within the record establishes that the State would have offered less than 15 years had it been recognized that the charged offense was a second-degree felony. A defendant is not entitled to a plea offer from the State. *See Hitchcock v. State*, 578 So. 2d 685, 90 (Fla. 1990). To assume that the State would have extended an offer of less than 15 years is pure speculation. *Bass v. State*, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006). Additionally, it is speculation to assume that Mr. Argo would have accepted a plea offer to a sentence of less than 15 years. Mr. Argo testified that he would have accepted a guidelines sentence; however, the State had filed a notice of intent to seek an enhanced penalty. It is well settled that postconviction relief cannot be based upon pure speculation. *Rodriguez v. State*, 919 So. 2d 1252 (Fla. 2005). Thus, the possibility of a more favorable plea offer does not establish a reasonable probability that the outcome of the proceedings would have been different, had defense counsel or the State been aware that the charged offense was a second-degree felony.

In sum, the court finds that Mr. Argo has not established a reasonable probability that the outcome of the proceeding would have been different, had counsel investigated and provided advice as to the degree of the charged offense. Grounds two and four of Mr. Argo's Motion for Postconviction Relief shall accordingly be denied.

(Respondent's Exhibit 38 at pp. 3-5).

The state court's conclusion that Argo did not establish prejudice is objectively reasonable and warrants denial of subclaims (a)(1) and (a)(2) pursuant to 28 U.S.C. § 2254(d) and (e).

### Sub-claim (a)(3)

Argo next alleges his attorney was ineffective for failing to present a legal basis in order to argue properly the motion for judgment of acquittal. Specifically, he asserts

counsel should have presented a legal basis revolving around the pocketknife's exclusion

from the statutory definition of a weapon. This claim is without merit, because the evidence

adduced at trial supported the conviction of attempted robbery with a weapon in light of the

manner in which the pocketknife was used. See sub-claim (a)(4) below.

### Sub-claim (a)(4)

Argo alleges trial counsel was ineffective for failing to request a jury instruction that

would have alerted the jury to the State's correct burden of proof. He contends counsel

should have requested a jury instruction based on the pocketknife's exclusion from the

statutory definition of a weapon. Argo raised this claim in his first motion for postconviction

relief. The state postconviction court's order sets out the applicable law in Florida

concerning this issue, and concludes that under the facts in Argo's case, the trial court

would have denied the request for such a jury instruction:

> In its Response, the State argues that such jury instructions are only
> appropriate when the evidence conclusively establishes that the knife blade
> was four inches or less in length and that it was carried in a folded position.
> The State notes that the circumstances in Defendant's case do not met [sic]
> this standard in that the victim testified that Defendant used the knife against
> him during the robbery displaying a six to eight inch open blade. In his Reply,
> Defendant argues that he is entitled to the instruction because a jury question
> exists whether Defendant used the common pocketknife found in his car or
> a knife consistent with the victim's description.
>
> It is widely recognized that although the case law does not discount
> section 790.001 of the Florida Statutes' applicability to robbery with a deadly
> weapon charges, the case law also recognizes that when the facts of the
> case warrant, the definitions "most pertinent to an armed robbery charge is
> found in the Florida Standard Jury Instructions for armed robbery." *Gust v.
> State,* 558 So. 2d 450, 452 (Fla. 1st DCA 1990); *see also Williams v. State;*
> 651 So. 2d 1242 (Fla. 2d DCA 1995) and *Holley v. State*, 877 So. 2d 893,
> 896 (Fla. 1st DCA 2004). "The Legislature's exclusion of common
> pocketknives from the definition of weapon does not mean that a pocketknife
> cannot be a deadly weapon." *Bunkley v. State*, 29 Fla. L. Weekly S251 (Fla.
> May 27, 2004)(Pariente, dissenting opinion)(citing to *State v. Nixon*, 295 So.

2d 121 (Fla. 3d DCA 1974). A common pocketknife is transformed into a deadly weapon or weapon when a defendant uses or threatens to use it during a crime in such a way that it would be likely to cause death or serious bodily injury or could be used to cause death or inflict serious bodily injury. *Holley* at 896 (citing to *Butler v. State*, 602 So. 2d 1303, 1304, n * (Fla. 1st DCA 1992); *Gust* at 452. As the State noted, the victim testified that Defendant threatened him with the protracted six to eight blade, moving the knife between his hands, while demanding the victim's wallet. See Court's Exhibit C at pp. 19-20; 32; 34. Even had counsel requested the 790.001 instruction on a weapon, the Court would have denied the request. Even if Defendant used a common pocketknife that fit within the section 790.001(13) definition, its purported use would have converted it to a deadly weapon or weapon outside the definition.

(Exhibit 18: 10/21/04 Order denying relief at pp. 1-2).

## Sub-claim (a)(5)

As his final allegation under the category of inadequate pretrial investigation, Argo contends counsel was ineffective for failing to provide an opening statement alerting the jury that evidence would demonstrate the pocketknife was not used in a manner sufficient for transformation to weapon or deadly weapon status. This allegation is without merit for the reasons stated in subclaim (a)(4) above. Not only did the State present evidence that the pocketknife was used as a weapon under Florida law, defense counsel cannot be deemed ineffective for failing to make any opening statement, much less a sufficient one.

### Sub-claim (b): Counsel's Misadvice

Argo asserts his counsel misadvised him as to his maximum exposure should he be convicted of the charged offense at trial. Argo contends this misadvice (that the offense charged was a first degree felony) prevented a challenge to the verdict form and jury instructions and impeded reasonably effective plea negotiations. This claim was addressed by the state postconviction court and denied after an evidentiary hearing. The court's conclusion that the result of the proceeding would not have been different had counsel

27

correctly informed Argo of the degree of the charged offense is objectively reasonable and entitled to deference.

Sub-claim (d): Counsel's Failure to Object

Argo alleges trial counsel was ineffective for failing to object to the prosecutor's improper comments during closing argument, the prosecutor's misstatement of law concerning the burden of proof, and the jury instruction and verdict form which set forth the lesser included offense of attempted robbery with a weapon. The first two of these three allegations have been addressed as substantive claims above. The prosecutor's comments and statement of the law were proper and even if improper, had no effect on the result of the trial. Consequently, Argo has failed to establish deficient performance or prejudice under the *Strickland* two-prong test as to those allegations. As to trial counsel's failure to object to the jury instruction and verdict form which included the lesser included offense of attempted robbery with a weapon, the state court determined in its order denying the second motion for postconviction relief after a hearing that Argo could not show deficient performance or prejudice under the *Strickland* standard. The court's order states in pertinent part:

> Mr. Argo has presented a sufficient claim that his counsel could have objected to the jury instructions in this case. The existing case law does not conclusively resolve his issue. Mr. Johnson testified that he would have objected to the jury instructions had he realized that the charged offense, like the lesser-included offense, was a second-degree felony. However, Florida's courts have explained that "[c]ounsel should not be expected to anticipate developments in the law that make possible the raising of a novel issue." *Thomas v. State*, 421 So. 2d 160, 165 (Fla. 1982). The jury instructions at issue in this ease presented a concern that has yet to be conclusively resolved by Florida's appellate courts. The court therefore finds that Mr. Argo's trial counsel was not constitutionally deficient in failing to raise an objection to the inclusion of the lesser-included offense of attempted robbery with a weapon on the jury instructions.

28

Even assuming the case law did establish that the jury instructions were erroneous, Mr. Argo's claim does not satisfy the prejudice component of a claim of ineffective assistance of counsel. The prejudice component of Mr. Argo's claim does not depend on the speculation that the jury would have exercised its "pardon power" to acquit him of the charged offense. *Compare Sanders v. State*, 946 So. 2d 953, 957 (Fla. 2006). This is because Mr. Argo was acquitted of the charged offense of attempted robbery with a deadly weapon. Mr. Argo's claim nonetheless rests on the speculation that had the lesser-included offense been attempted robbery, a third-degree felony, that the jury would have found him guilty of this offense rather than attempted robbery with a deadly weapon. The record does not establish a reasonable probability that the outcome of the proceeding would have been different, had counsel raised an objection to the jury instruction in this case. Ground three of Mr. Argo's Motion for Postconviction Relief shall accordingly be denied.

(Respondent's Exh. 38 at pp. 6-8).

The state court's conclusion is well-reasoned and must be granted deference pursuant to the AEDPA. Argo's claim of ineffective assistance of trial counsel as to this jury instruction must be denied.

### Sub-claim (e): Cumulative Effect of Counsel's Alleged Errors

Finally, Argo asserts that the cumulative effect of counsel's errors combined as a whole amounts to a violation of due process. Although this claim was raised in ground five of the first motion for postconviction relief, it was reasonably rejected by the state court, having found no error as to each individual claim. In such cases, there can not be "cumulative" error. *See, e.g., Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987)(Petitioner could not obtain habeas relief through aggregation of individual meritless claims he had averred; twenty times zero is zero). *See also, Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir.1998)("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."), *cert. denied*, 526 U.S. 1025 (1999); *United States v. Easter*, 66 F.3d 1018, 1023 (9th Cir. 1995)(The court

having found no error in the district court's rulings, there is, *a priori*, no cumulative effect error).

Ground Three does not warrant habeas corpus relief.

### Argo's Reply to Respondent's Response

The Court has carefully reviewed Argo's reply to the response. The Court finds that Argo's arguments in the reply are not persuasive.

Accordingly, the Court orders:

That Argo's petition for writ of habeas corpus (Doc. 46) is denied. The Clerk is directed to enter judgment against Argo and to close this case.

### CERTIFICATE OF APPEALABILITY AND

### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in

these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on August 16, 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Larry W. Argo